**WESTERN UNION TELEGRAPH COMPANY, Appellant,**

v.

**MASSMAN CONSTRUCTION COMPANY and Fred J. Early, Jr., Company, Inc., Appellees.**

**No. 13821.**

District of Columbia Court of Appeals.

Argued April 16, 1979.

Decided June 19, 1979.

Kevin W. Carmody, Washington, D. C., for appellant. Michaela M. Twomey, Washington, D. C., also filed an appearance for appellant.

J. Joseph Barse, Washington, D. C., for appellees.

Before NEWMAN, Chief Judge, and KERN and HARRIS, Associate Judges.

KERN, Associate Judge:

Appellant Western Union seeks reversal of the trial court's ruling that its claim against appellees for recovery of damages is grounded in tort, not contract, and therefore must be dismissed as untimely filed under the applicable statute of limitations, D.C.Code 1973, § 12–301(3), which commenced in its view to run from the date of damage to appellant's facilities. The court, in dismissing the complaint, rejected appellant's theory that it was a third-party beneficiary of a contract to which appellees were promisors. Instead, the court found that appellant was merely an incidental beneficiary to the contract and therefore unable to assert rights under it.

The record reflects that in May 1972, the Washington Metropolitan Area Transit Authority (WMATA) contracted with appellees (operating as a joint venture under the name of Early-Massman) for the construction of part of the McPherson Square section of the Metro subway system. As part of the contract Early-Massman agreed to maintain, protect and restore those utilities affected by the construction, to perform the construction in such a manner as to keep existing utilities in operation and to repair at its expense all damage to utilities caused by its work. Among the utilities named in the contract were "Telegraph Company Facilities." No work could begin until Early-Massman had located utility facilities and submitted its plans to appellant and other utility owners for approval. The contract further required collaboration between Early-Massman and all utility owners in preparation of schedules and working drawings that affected the utilities.

On June 20, 1973, Early-Massman struck and damaged appellant's underground equipment. Appellant made temporary repairs on its facilities in order to maintain service and sent Early-Massman a bill on March 11, 1974 for $807.21. Early-Massman forwarded the bill to National Loss Control Service Corporation (NLCSC),[1] an insurance adjuster for Lumbermens Mutual Casualty Company which had issued a policy for liability insurance to WMATA with appellees named as the insured.

On April 5, 1974, appellant sent Early-Massman a second bill for $2,765.12, representing additional expenses incurred in repairing the damage to its equipment. By a letter of May 21, 1974, Early-Massman advised appellant that it had sent both bills to NLCSC and had requested expedited payment by the insurance carrier. A representative of NLCSC sent appellant a letter on December 10, 1974, stating that the company would "take care" of the two bills but preferred to wait until final repairs were completed so as to pay all of the bills at one time. Six days later, appellant responded requesting immediate payment.

On April 22, 1975, appellant received a letter from NLCSC stating that Early-Massman was not legally responsible for the damage and that appellant would *not* be reimbursed for making repairs to its facilities. After further unsuccessful negotiations among the parties, appellant again demanded payment of NLSC in February 1977. NLCSC refused on March 7 stating that the statute of limitations had expired. Appellant filed suit on May 20, 1977, claiming $3,572.33 for Early-Massman's negligent damage to its equipment. Appellees moved for judgment on the pleadings claiming that the three-year statute of limitations had already expired before the filing of the suit and hence precluded the claim. In late August appellant filed an amended complaint which included as its theory of recovery that it was a third-party beneficiary to

---

1. NLCSC was originally a party to this suit; however, appellant dismissed its complaint against NLCSC while this case was pending appeal.

the WMATA-Early-Massman contract and claimed $19,186.48 in damages ($3,752.33 plus $15,614.15 for final repairs).[2]

The trial court held that appellant was, at best, only an incidental beneficiary to the WMATA-Early-Massman contract concerning construction of part of the Metro system and therefore had no right to recover as a third-party beneficiary. Finding the suit grounded on tort, the court dismissed appellant's complaint as untimely filed under D.C.Code 1973, § 12–301(3).

Appellant urges that the court erred in its determination that appellant was not a third-party beneficiary to the WMATA-Early-Massman contract, and that since it did have rights under this contract the statute of limitations would not preclude suit because either (1) no breach occurred until the NLCSC letter to appellant of April 22, 1975, and that the three-year statute of limitations, D.C.Code 1973, § 12–301(7), may only begin to run from that date, or (2) NLCSC's (Early-Massman's agent's) letter of December 10, 1974, to appellant was an acknowledgment of a debt from which time the statute began to run anew under D.C. Code 1973, § 28–3504. We conclude that appellant was a third-party beneficiary and that the breach of contract did not occur until, at the earliest, April 22, 1975. Hence, appellant's suit was timely filed.[3]

■    One who is not a party to a contract nonetheless may sue to enforce its provisions if the contracting parties intend the third party to benefit directly thereunder. *Moran v. Audette,* D.C.App., 217 A.2d 653, 654 (1966); *Aetna Casualty & Surety Co. v. Kemp-Smith Co.,* D.C.App., 208 A.2d 737, 738–39 (1965). We will read the contract as a whole to determine whether the third party's benefit under the contract is intended or incidental. *Moran v. Audette, supra* at 654. Consequently, the absence of the third party's name from the contract is not fatal to his claim, especially when the surrounding circumstances tend to identify the third-party beneficiary. *Id.* (Only one person was entitled to a commission as broker.) The contract before us does not mention appellant by name, although in enumerating the various types of utilities contemplated in the contract it includes appellant under the rubric "Telegraph Company." We note that the contract, even though it is written open-endedly, does not contemplate all telegraph companies or even all the enumerated types of utilities. Rather, it must be read to refer to those utilities whose cables, wires, and other equipment ran through the underground area that was the job-site under the contract. Further, the contract contemplates appellant's role as an active participant in the work to be performed under the contract rather than as a total stranger to the contract who, by chance, enjoys an occasional benefit. Finally, the contract provides specifically that appellee should maintain and support the underground equipment of the various utilities in addition to undertaking all repairs for any damage caused. Quite clearly, this contract does more than merely indemnify WMATA for any liabilities arising out of appellees' performance. We hold, therefore, on the basis of all of these factors, that appellant was an intended beneficiary under the WMATA-Early-Massman contract and was entitled to sue to enforce its provisions.

■    We turn now to the statute of limitations issue. D.C.Code 1973, § 12–301(7) begins to run when a contract is breached. In *Dillard v. Travelers Insurance Co.,* D.C. App., 298 A.2d 222 (1972), plaintiff claimed double indemnity benefits as beneficiary of her deceased husband's life insurance policy. We held there that the breach occurred when the insurance company refused to honor the double claim, not when the husband died. *See also Fowler v. A & A Co.,* D.C.App., 262 A.2d 344 (1970) (statute of limitations commenced when contractor repudiated guarantee of dry basement one

---

2. The record indicates that appellant, in August 1977, demanded payment for this latter amount and was refused.

3. Finding the breach to have occurred within three years of the commencement of the suit, we need not consider appellant's second theory of recover under· D.C.Code 1973, § 28–3504.

year after basement became wet). In the case before us, since the contract made Early-Massman liable for utility damage no breach occurred until it repudiated that liability. At the earliest, that repudiation came on April 22, 1975, when NLCSC, which was adjusting the claim for Early-Massman, refused payment. Before this date there was no indication that Early-Massman would not honor its liability to appellant.

██ We conclude that the earliest possible date from which the statute of limitations could commence is April 22, 1975, but we need not decide the precise date of breach. That issue and whether NLCSC was acting as Early-Massman's agent on that date or whether Early-Massman itself breached then or at a later date are matters to be resolved in the trial court after remand for a trial.

We hold that appellant was a third-party beneficiary, and well within the three-year statute of limitations since the breach occurred no earlier than April 22, 1975, and its suit commenced on May 20, 1977. Accordingly, the court in our view erred in dismissing appellant's complaint.

*Reversed and remanded.*