# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 13, 2010       Decided January 14, 2011

No. 09-7128

CAPITOL SPRINKLER INSPECTION, INC.,
APPELLANT

v.

GUEST SERVICES, INC.,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cv-02115-CKK)

———

*Theodore J. Segletes III* argued the cause for appellant. With him on the briefs was *Michael T. Hamilton.*

*Stephen A. Horvath* argued the cause and filed the brief for appellee Guest Services, Inc.

Before: GINSBURG, ROGERS and GARLAND, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: Capitol Sprinkler Inspection, Inc., the defendant in the district court, appeals the summary judgment entered for Guest Services, Inc. on Capitol's third-party claims for negligence and breach of contract in connection with a burst pipe at a building managed by Guest. Guest argues we lack jurisdiction for want of a timely notice of appeal. We hold that we have jurisdiction of the appeal based upon Federal Rule of Appellate Procedure 4(a)(2) and affirm the district court in all respects.

## I. Background

Gallaudet University hired Guest to manage the conference center building on its campus in Washington, D.C. Guest in turn retained Capitol to service the fire sprinkler system in the conference center. One of Capitol's contractual duties was "open[ing] condensation drains on drum drip connections and drain[ing] low points during fall and winter inspection."

In January 2003 two of Capitol's inspectors came to the conference center, where they were met by someone who escorted them around the building. The record does not reveal whether their escort was an employee of Guest. While on site, the inspectors drained water from all but one of the drum drips; that one was in a locked room for which the escort was not carrying a key card. Later that month, a pipe fitting froze, burst, and discharged water, which would not have happened if Capitol's inspectors had drained the drum drip.

Gallaudet filed a claim for the resulting damage with its property insurer, St. Paul Mercury Insurance. St. Paul, as Gallaudet's subrogee, then filed suit against Capitol for both negligence and breach of contract. Capitol in turn filed a

third-party complaint against Guest, seeking contribution or indemnity, again based upon both negligence and breach of contract.

All parties filed dispositive motions. St. Paul moved for partial summary judgment on its contract claim against Capitol, which cross-moved for summary judgment against St. Paul on both claims. Capitol and Guest filed cross-motions for summary judgment on the third-party claims. All the motions drew responses and replies except that Guest did not timely respond to Capitol's motion for summary judgment. The district court denied Guest's motion to file a late response but nonetheless deemed Capitol's motion for summary judgment opposed because Guest, in the course of supporting its own motion, had briefed the relevant issues.

The district court denied Capitol's motion for summary judgment against Guest and its motion to strike Guest's reply in support of its motion for summary judgment. Because St. Paul had argued that Capitol could not prevail without expert testimony to explain the applicable standard of care in tort and the contractual duty Guest owed to Capitol but "the parties [had] devote[d] only scant attention to" the subject, the court was "unwilling to rule on [that] dispositive issue"; instead the court held all other motions in abeyance pending supplemental briefing on the need for expert testimony. On June 15, 2009 the district court, having determined Capitol could not prove its claims or defenses without expert testimony to explain Guest's duty, entered an order granting Guest's and St. Paul's motions respectively for summary and for partial summary judgment and stating "Guest Services is dismissed from further proceedings in this case." St. Paul's tort claim against Capitol, which had not been a subject of St. Paul's dispositive motion, alone remained pending.

Capitol then filed a motion pursuant to Federal Rule of Civil Procedure 54(b) asking the district court to certify an interlocutory appeal or, in the alternative, for reconsideration of its June 15 order granting summary judgment to Guest. The district court denied Capitol's motion, holding an immediate appeal would be inappropriate because the third-party claims overlapped with St. Paul's claims against Capitol and rejecting Capitol's arguments in the alternative for reconsideration.

On October 16 Capitol and St. Paul informed the court they had "settled all claims between them," would "finalize a settlement agreement" within 30 days, and would thereafter file a joint stipulation of dismissal. Later that same day Capitol filed a notice of appeal with respect to its claims against Guest. Later still that day, the district court entered an order dismissing the case without prejudice based upon the impending settlement and stating the case would stand dismissed with prejudice as of October 26 unless counsel moved to extend the date or to reopen the case. On October 23 St. Paul and Capitol filed their joint stipulation of dismissal. The order dismissing the case having become final on October 26, this appeal by Capitol proceeded without further action by the district court and without Capitol having filed a notice of appeal from the final judgment.

## II. Analysis

On appeal, Capitol challenges the district court's order denying its and granting Guest's motion for summary judgment, and the orders denying its motions (1) to supplement its expert disclosures, (2) to strike Guest's reply, and (3) for reconsideration or for an appealable judgment under Rule 54(b). Guest defends each of those orders but first argues this court lacks appellate jurisdiction. We begin, of

course, with our jurisdiction. *Yousuf v. Samantar*, 451 F.3d 248, 251 (D.C. Cir. 2006).

A.   Appellate Jurisdiction

To vest this court with appellate jurisdiction under 28 U.S.C. § 1291, the appellant must file a timely notice of appeal from a final, appealable judgment of the district court. *See Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 203 (1988) (timely notice of appeal is "mandatory and jurisdictional"); *St. Marks Place Hous. Co. v. U.S. Dep't of Hous. & Urban Dev.,* 610 F.3d 75, 79 (D.C. Cir. 2010) (final judgment required).  The district court ordinarily enters a final judgment only after it has disposed of all claims against all parties.  *See* FED. R. CIV. P. 58; *Cambridge Holdings Grp., Inc. v. Federal Ins. Co.,* 489 F.3d 1356, 1363 (D.C. Cir. 2007).   The district court may, however, exercise its discretion to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties."  FED. R. CIV. P. 54(b).

In the present case, it is undisputed Capitol's only notice of appeal was filed prematurely, that is, before the district court had entered a final, appealable judgment.  When Capitol filed the notice of appeal on October 16, the district court had granted summary judgment in favor of Guest on Capitol's third-party claims — the only claims Capitol sought to appeal — but had neither disposed of all St. Paul's claims nor entered a partial final judgment pursuant to Rule 54(b). Indeed, the court had expressly denied Capitol's motion for a Rule 54(b) judgment.  St. Paul and Capitol had notified the court earlier that day of their agreement to settle the remaining claims, but their letter informed the court they would file a stipulation of dismissal in the future, making it

clear the proceedings in the district court were still ongoing as of October 16**.**

A premature notice of appeal "filed after the court announces a decision or order [] but before the entry of judgment or order" can be saved by Federal Rule of Appellate Procedure 4(a)(2), which provides such a notice is to be "treated as filed on the date of and after the entry" of a judgment or order. Still, the Supreme Court has held "Rule 4(a)(2) permits a notice of appeal from a nonfinal decision to operate as a notice of appeal from the final judgment only when a district court announces a decision that *would be* appealable if immediately followed by the entry of judgment," because in such a situation a litigant could reasonably believe the order was appealable. *FirsTier Mortg. Co. v. Investors Mortg. Ins. Co.,* 498 U.S. 269, 276 (1991). In *FirsTier*, Rule 4(a)(2) rescued a notice of appeal filed after the district court had "announced from the bench" a ruling that addressed all the claims before it. *Id.* at 270. "Had the judge set forth the judgment immediately following the bench ruling, and had the clerk entered the judgment on the docket," there could be "no question that the bench ruling would have been 'final' under § 1291." *Id.* at 277.

In *Outlaw v. Airtech Air Conditioning & Heating, Inc.*, this court held Rule 4(a)(2) applies to a ruling disposing of fewer than all parties or all claims no differently than to a ruling disposing of an entire case. 412 F.3d 156, 161–62 (2005) (Roberts, J.). That is, if the appellant files a notice of appeal after the district court has issued, orally or in writing, an order that would be appealable if followed by a partial final judgment issued pursuant to Rule 54(b), then the notice ripens when a final judgment is later entered. The court reached this issue in *Outlaw* because the plaintiff filed a notice of appeal after the district court had entered summary

judgment for two of the three defendants. *Id.* at 158–59. In these circumstances, we acknowledged that, because the court's order did not dispose of all claims against all parties, "[s]imple entry of judgment would not have had the same effect" as in *FirsTier* but we saw no reason the rule in that case should not extend to a case in which entry of a Rule 54(b) judgment would have made an order appealable. *Id.* at 161–62. When the district court later enters a final judgment, regardless whether "the hypothetical judgment considered in applying [the *FirsTier* test is] the same type as the one actually entered," the notice of appeal is saved by Rule 4(a)(2). *Id.* at 162.

In this case, Capitol would have been able to appeal if the district court had entered a Rule 54(b) judgment after it granted summary judgment for Guest, and it is undisputed the district court did eventually enter a final judgment disposing of the entire case. The relevant question here is whether anything that happened before Capitol filed its notice of appeal warrants a different result than in *Outlaw*.

Guest first argues Rule 4(a)(2) does not apply because it applies only to decisions that have been "announced from the bench" whereas here, unlike in *Outlaw*, all decisions were written. That factual difference is of no moment, however; indeed, the relevant ruling in *Outlaw* was a written order granting summary judgment as to fewer than all parties. *See id.* at 159.

A more promising distinction between this case and *Outlaw* might be that here the district court had denied Capitol's Rule 54(b) motion and request to certify an interlocutory appeal against Guest, arguably indicating thereby that the possibility of an appealable judgment was foreclosed. The difference is not significant, however; the

analysis in *Outlaw* turned upon whether a "hypothetical" judgment under Rule 54(b) would have rendered the case appealable, *id.* at 162 ("[t]he analysis was hypothetical in *FirsTier* itself"). We did not consider whether there was "no just reason for delay" or whether the district court would have abused its discretion by entering a Rule 54(b) judgment, as we would have done were we reviewing an actual rather than a hypothetical judgment. *See, e.g.*, *Brooks v. Dist. Hosp. Partners, L.P.*, 606 F.3d 800, 806–07 (D.C. Cir. 2010); *Bldg. Indus. Ass'n v. Babbitt*, 161 F.3d 740, 743–45 (D.C. Cir. 1998). A Rule 54(b) judgment was no less hypothetically possible in this case once the district court had entered its order granting summary judgment.

At oral argument Guest argued the reference to a litigant's reasonable expectations in *FirsTier*, 498 U.S. at 276–77, suggests Capitol should not have the benefit of Rule 4(a)(2) because, having made and lost a Rule 54(b) motion, it was not reasonable to believe the partial summary judgment order was appealable. In *Outlaw* we understood the rather "imprecise guide" of reasonableness not as a stand-alone test but rather as informing the more concrete aspects of the Supreme Court's analysis in *FirsTier*. *See* 412 F.3d at 161–62. Rather than deciding whether the plaintiff "reasonably but mistakenly" thought the summary judgment order was a final judgment, this court focused upon the Supreme Court's statement that Rule 4(a)(2) rescues a notice of appeal taken from a decision that "'*would be* appealable if immediately followed by the entry of judgment.'" *Id.* at 161 (quoting *FirstTier,* 498 U.S. at 276). As we recognized, this objective understanding of Rule 4(a)(2) is more appropriate to a jurisdictional analysis than would be a flexible standard focusing upon reasonableness. *See id.* Applying this objective test, Capitol's notice of appeal was timely under

Rule 4(a)(2) and we have jurisdiction to consider its appeal, to which we now turn.

B.   Capitol's Motion for Summary Judgment

The district court denied Capitol's motion for summary judgment because it found there were

> genuine issues of material fact as to whether Capitol Sprinkler was escorted by a Guest Services employee ..., whether and to what extent Guest Services operated as an agent of Gallaudet, and whether and to what extent [the relevant standard of the National Fire Protection Association was] incorporated into the Inspection Agreement between Capitol Sprinkler and Guest Services.

*St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 573 F. Supp. 2d 152, 178–79 (2008).

Capitol argues the court should have granted its motion for summary judgment because Guest did not oppose the motion, as required by Local Civil Rule 7(h) and by the district court's scheduling order.  As Guest correctly points out, however, Rule 7(h) provides the district court "may assume" facts not denied in an opposition have been admitted, thus leaving the matter to the district court's discretion, and "this court has long recognized that the district court does not abuse its discretion by declining to invoke the requirements of the local rule in ruling on a motion for summary judgment." *Burke v. Gould*, 286 F.3d 513, 518 (D.C. Cir. 2002) (addressing predecessor rule).  The district court's scheduling order did not limit this discretion because, being interlocutory, the district court retained the power to revise the order at any

time prior to appeal. *See Langevine v. District* of *Columbia,* 106 F.3d 1018, 1023 (D.C. Cir. 1997). In the present case, in which Guest had filed a cross-motion addressing the same issues that would have been addressed in a response to Capitol's motion, we hold the district court did not abuse its discretion by declining to grant Capitol's summary judgment motion for want of an opposition thereto.

Capitol also argues the district court erred by denying the summary judgment motion on its merits, a decision we review de novo. *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 3 (D.C. Cir. 2010). Summary judgment is appropriate if, viewing all evidence "in the light most favorable to the nonmoving party and draw[ing] all reasonable inferences in its favor," *Venetian Casino Resort, L.L.C. v. EEOC,* 530 F.3d 925, 929 (D.C. Cir. 2008), "there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a).

As to the merits, Capitol's first but cursory argument is that the district court erred by weighing the evidence. This argument is beside the point because our review is de novo. *See Wiley v. Glassman*, 511 F.3d 151, 156 (D.C. Cir. 2007) ("because we review the [d]istrict [c]ourt's decision de novo, we conduct an independent evaluation of the record").

Capitol also fails to establish it is entitled to judgment as a matter of law because Guest was responsible for the acts and omissions of the escort. One of Capitol's inspectors testified in his deposition the escort was "assigned" to provide access to certain rooms but did not say by whom he was assigned. There was an affidavit before the district court from Capitol's other inspector conclusorily stating the escort was "an agent of Guest Services, Inc." Even assuming — as did the district court, *see* 573 F. Supp. 2d at 161 — this is

evidence upon which a jury reasonably could find the escort worked for Guest, summary judgment for Capitol is inappropriate because, as Guest notes, the testimony falls short of establishing the escort's employment status as a matter of law, such that a jury could not find otherwise.

Next, Capitol argues that, unlike the district court, we should consider Guest's conduct before and on the day the pipe burst, "not the least of which was [its] failure to timely terminate water flow." Notwithstanding its use of the phrase "the least," Capitol identifies no other conduct the court should have considered. As Guest argues, the alacrity with which it staunched the flow of water is relevant only to the measure of damages, which is not at issue in this appeal.

Finally, Capitol's argument that it could have proven its case using St. Paul's expert or its own so-called "hybrid" fact-cum-expert witnesses, is off the mark because, again as Guest notes, the testimony of those witnesses would not bear upon the relationship between Guest and the escort. Therefore we affirm the order of the district court denying Capitol's motion for summary judgment.

C.  Guest's Motion for Summary Judgment

Capitol next challenges the order granting summary judgment for Guest. The district court granted that motion because Capitol had failed to present the expert testimony required under District of Columbia law to prevail upon its claims, which sound in tort and contract. *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 627 F. Supp. 2d 1, 2 (2009). Our review is de novo. *McFadden*, 611 F.3d at 3.

First, Capitol argues summary judgment was inappropriate because the district court had concluded there were genuine issues of material fact as to whether the escort worked for Guest, whether Guest was Gallaudet's agent, and whether the National Fire Protection Association (NFPA) standards were incorporated into the contract between Guest and Capitol. Guest responds that, although disputed, none of these three issues is material because Capitol's failure to disclose, pursuant to Rule 26, expert testimony concerning the standard of care or contractual duty independently dooms its claims respectively for negligence and for breach of contract. Both claims are premised upon applying the NFPA standard for building owners' dealings with inspectors. Under that standard, a building owner must "provide ready accessibility to components of water-based fire protection systems that require inspection, testing, or maintenance."

As the district court noted, 627 F. Supp. 2d at 11–12, Capitol did not disclose any expert testimony concerning the meaning of "ready accessibility," served only a cursory disclosure that did not address the standard of care and did not designate any of its "hybrid" witnesses to offer expert testimony. Capitol's argument it could have relied upon St. Paul's expert witness is also unpersuasive because, as Guest notes, his report does not address the meaning of "ready accessibility."

Capitol's fallback argument is that expert testimony was not required in any event: "If the court had provided guidance on the statute's interpretation, a jury could have come to a conclusion regarding whether Guest provided Capitol with 'ready accessibility,'" all the more so because the disputed issue — whether the drum drip was readily accessible if the inspectors had to wait five to ten minutes to gain access — is factually straightforward. The controlling case law is less

forgiving than Capitol assumes; in the District of Columbia an expert witness is required to establish the standard of care or the contractual duty, *see Sherman v. Adoption Ctr. of Washington, Inc.,* 741 A.2d 1031, 1036 n.11 (D.C. 1999) (same analysis for both), when "the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson," *Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839, 845 (D.C. Cir. 2007) (internal quotation marks omitted). In the last cited case the court held expert testimony was required in order to establish the standard for "adequate" lighting of a temporary walkway in a construction area of a Metrorail station and to establish when it was safe to replace plywood barriers around the construction area with chain-link fencing. *Id.* at 846. As there noted, District of Columbia cases call for expert testimony concerning the maintenance of leaning trees, the application of hair relaxer, and even the tightness of hand cuffs. *Id.* at 845–86 (collecting cases). Capitol relies upon *McNeil Pharmaceutical v. Hawkins*, 686 A.2d 567, 580 (D.C. 1996), because the court there observed that "guidance from the court" might, in a negligence per se case, provide an alternative to expert testimony "to assist the jury's understanding." The case stands, however, for the more narrow proposition that in some circumstances, as where a statute uses terms familiar to a lay person, the district court's jury instructions may provide sufficient guidance.

In the light of these precedents, Capitol clearly was required to present expert testimony on what it means to have "ready accessibility" to a drum drip. Although accessibility of a drum drip is not a complex technical issue and might appear to be within a jury's understanding, *id.* at 845, the specific requirements of a set of rules for fire protection, like the specific requirements for safely lighting a subway station, are not a matter of common knowledge. Because Capitol did

not offer expert testimony to explain the NFPA standard, summary judgment for Guest was appropriate.

D.   Rulings Reviewed for Abuse of Discretion

As noted before, Capitol also challenges the orders of the district court denying its motions (1) to supplement expert disclosure, (2) to strike a reply, and (3) for judgment under Rule 54(b) or for reconsideration.  We review all three rulings for abuse of discretion.  *See Washburn v. Lavoie*, 437 F.3d 84, 94 (D.C. Cir. 2006) (discovery deadlines); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996) (motion to strike); *Flynn v. Dick Corp.*, 481 F.3d 824, 829 (D.C. Cir. 2007) (motion for reconsideration).

1.   Motion to Supplement Expert Disclosure

Capitol argues the district court erred by denying its motion to file a supplement to its expert disclosures after the deadline for filing had passed and discovery had closed.  The court denied the motion because it concluded Capitol had not shown "good cause" for its tardiness, as required by Federal Rule of Civil Procedure 16(b)(4).  *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, Civ. A. No. 05-2115, 2007 WL 1589495, at *5–9 (June 1, 2007).  Capitol argues there was good cause for an extension because Guest did not promptly make available for deposition certain witnesses who would have provided facts essential to the report by Capitol's expert.

As Guest suggests, "[t]he good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite [its] diligence.'" *S&W Enters., LLC v. SouthTrust Bank,* 315 F.3d 533, 535 (5th Cir. 2003)

(quoting 6A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990)). Capitol's actions in this case do not bespeak diligence or any sense of urgency at all in preparing its expert's report, which was only a single page in length. Capitol noticed the depositions at issue for October 16, 2006 — the same day the report was due — meaning, as the district court concluded, the report "could not practically have incorporated any information from" the depositions. Civ. A. No. 05-2115, 2007 WL 1589495, at *7. Even after the depositions were cancelled and the district court extended the expert disclosure deadline by a month, Capitol did not again notice the depositions or file a supplement to its report during that period. Indeed, Capitol never again noticed the depositions and attempted to supplement its report only after the close of discovery. Because Capitol did not show "good cause," the district court did not abuse its discretion by denying Capitol's motion for an extension of time.

### 2.    Motion to Strike Guest's Reply

Capitol next argues the district court erred by denying its motion to strike the reply Guest filed in support of its motion for summary judgment; the motion to strike was based upon Guest's supposedly late introduction of arguments and facts. The district court rejected this argument and denied the motion to strike because the reply brief and an attached affidavit did no more than bolster Guest's opening arguments.[*] Accordingly, we hold the district court did not abuse its discretion by denying the motion. *Cf. Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distrib.*,

---

[*] We note also the allegedly new facts and arguments to which Capitol points were raised in direct reply to Capitol's submission of what the district court later determined was a "sham affidavit."

647 F.2d 200, 201 (D.C. Cir. 1981) ("motions to strike, as a general rule, are disfavored").

3.    Motion for Interlocutory Appeal or Reconsideration

Finally, Capitol argues the district court erred by denying its motion for a Rule 54(b) judgment, which would have enabled Capitol to appeal at once the order granting summary judgment to Guest, or in the alternative, for reconsideration of the same order. The interlocutory appeal issue is now moot because a final judgment has been entered and the case has been presented to this court on appeal. Thus, Capitol has already obtained the relief it sought, that is, the right to appeal the order. *See I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 24 (D.C. Cir. 1986) (interlocutory order merges into final judgment and is reviewable upon appeal from final judgment).

The district court addressed Capitol's request for reconsideration pursuant to Rule 54(b), which not only authorizes the court to enter a partial final judgment but also recognizes its inherent power to reconsider an interlocutory order "as justice requires." *See Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22–23 (1st Cir. 1985) (Breyer, J.) ("the district judge is in the best position to assess whether or not 'justice requires' [reconsideration]").

The district court understandably determined justice did not require reconsidering its order, for Capitol raised no arguments for reconsideration the court had not already rejected on the merits except its argument that the court had improperly weighed testimony. Similarly, on appeal, Capitol merely repeats its arguments concerning summary judgment. These arguments are without merit for reasons already stated;

*a fortiori*, the district court did not abuse its discretion by denying Capitol's motion for reconsideration.

## III. Conclusion

For the foregoing reasons, this court has appellate jurisdiction of the instant matter pursuant to Rule 4(a)(2), and the judgment of the district court is in all respects

*Affirmed.*