United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

No. 24-7109

**September Term, 2025**
FILED ON: SEPTEMBER 9, 2025

TEDDY MENDOZA, ET AL.,
            APPELLANTS

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,
            APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-01241)

Before: HENDERSON and RAO, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*

**J U D G M E N T**

We considered this case on the record and the briefs filed by the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). We fully considered the issues and determined that a published opinion is unnecessary. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is

**ORDERED** and **ADJUDGED** that the order of the district court entered on June 28, 2024 granting appellee's motion for summary judgment be **AFFIRMED**.

**I. Background**

On June 3, 2019, appellants Teddy Mendoza and Valerie Hale[1] were contractors working to load boxes of cash collected from WMATA metro stations onto a special-purpose, non-passenger train (the "money train"). Appellee's Br. 3. On that day, the money train did not have a functioning door-interlock mechanism; as a result, safety features designed to prevent the train from moving while a door is open were not operational. *Id.* at 4; Appellants' Br. 6. A WMATA employee bypassed that mechanism earlier in the day when she was unable to access the "all doors closed" message and thus could not move the train with the mechanism engaged, even with a technician's assistance. Appellee's Br. 3–4. WMATA procedures require approval from the Rail Operations Control Center before bypassing the interlock mechanism but the train operator

---

[1] Hale is now deceased and her case is pressed by her estate. Appellants' Br. 5.

proceeded without that authorization. *Id.* at 4.

At one stop, after the cash was loaded onto the money train and just as Mendoza attempted to step onto the train, the train began to depart despite the door being open. Video Submission C-C01-P020 at 1:45–47. The side of the doorframe struck Mendoza, knocking him out of the doorway and back onto the platform; then the train quickly stopped and Mendoza boarded. *Id.* at 5; *see also* Video Submission C-C01-P020 at 1:45. Hale was standing in the train car at the time. Her estate asserts that she was thrown and injured by the train's unexpected acceleration. Appellants' Br. 6. Both appellants sued WMATA for negligence. The district court granted WMATA's motion for summary judgment and we now affirm.

## II. Analysis

"Federal jurisdiction over this lawsuit arises under the WMATA Compact." *Robinson v. WMATA*, 774 F.3d 33, 37–38, 37 n.2 (D.C. Cir. 2014) (citing D.C. Code § 9-1107.01(81)). Under the Compact, our disposition is controlled by the tort law of the District of Columbia "and we must aim to achieve the same outcome that would result if the District of Columbia Court of Appeals considered this case." *Id.* at 38 (citing *Briggs v. WMATA*, 481 F.3d 839, 843 (D.C. Cir. 2007)) (citation modified). By that standard, "a plaintiff seeking to prove her case through direct evidence of negligence has the burden of establishing three elements: (1) the applicable standard of care; (2) a deviation from that standard by the defendant; and (3) a causal relationship between the deviation and the injury she suffered." *Id.* (citing *Varner v. District of Columbia*, 891 A.2d 260, 265 (D.C. 2006)) (citation modified).

"Proof of a deviation from the applicable standard of care need not include expert testimony where the alleged negligent act is within the realm of common knowledge and everyday experience." *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988) (citation modified). But where "the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson," the plaintiff cannot establish the standard of care without expert testimony. *Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009) (citation modified).

If expert testimony is required to establish the standard of care, "failure to offer such testimony . . . justif[ies] the grant of summary judgment." *Burke v. Air Serv. Int'l, Inc.*, 685 F.3d 1102, 1106 (D.C. Cir. 2012). "The decision whether to . . . require expert testimony on a particular state of facts is confided to the sound discretion of the trial court," which the D.C. Court of Appeals has characterized as "broad." *Varner*, 891 A.2d at 266 (citation modified). Thus, notwithstanding our review of summary judgment orders *de novo*, we review the district court's determination that expert testimony was required for abuse of discretion. *Id.* at 265–66.

Appellants claim the district court "mischaracterize[d] . . . the issue as one requiring specialized knowledge of train operation . . . [where] the dangers of overriding safety mechanisms and leaving the doors open on a moving vehicle are plainly within the ken of the average layperson." Appellants' Br. 7. This argument would be more persuasive if appellants alleged the money-train operator intentionally left the doors open on the train or knowingly departed with

2

a door still open.  But the thrust of appellants' argument is that the train operator negligently bypassed a train safety mechanism in violation of WMATA procedures and this deviation from the standard of care led to their injuries.  The district court thus accurately characterized the standard of care as pertaining to technical knowledge of train operations not "within the realm of common knowledge and everyday experience."  J.A. 289–90 (quoting *Toy*, 549 A.2d at 6).  "[T]he 'common knowledge' exception to the expert testimony requirement is recognized only in cases in which everyday experience makes it clear that jurors could not reasonably disagree over the care required."  *Briggs*, 481 F.3d at 845.  That is not the case here.  Regardless of the complexity of the door-interlock mechanism, if "the specific requirements of a set of rules . . . are not a matter of common knowledge," expert testimony is required.  *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 225 (D.C. Cir. 2011).  At the very least, "the trial judge did not err or abuse his discretion in holding that, without expert testimony, there was insufficient evidence of negligence to present a jury question."  *Varner*, 891 A.2d at 267.

Moreover, WMATA's standard operating procedures cannot themselves establish the standard of care.  *See* Appellants' Br. 7 (arguing "WMATA's own standard operating procedures sufficiently establish this requisite standard of care").  "Especially in cases involving safety standards, the expert must also show that the particular practice at issue reflects a *national* standard of care."  *Robinson*, 774 F.3d at 39.  "[A]lthough internal agency manuals such as WMATA's standard operating procedures may provide evidence bearing on the standard of care, they do not, on their own, establish the national standard."  *Id.* (citing *Briggs*, 481 F.3d at 848).  To avoid disincentivizing the District from "aspiring to efforts beyond an applicable national standard," an expert must show that the procedures do not establish a "higher, more demanding" standard than the national standard that District of Columbia courts apply in negligence cases.  *Clark v. District of Columbia*, 708 A.2d 632, 636 (D.C. 1997).  WMATA's standard operating procedures would be admissible as supporting evidence but expert testimony must address the *national* standard.  Thus, Appellants failed to put forward evidence of the relevant standard of care.

\* \* \*

For the foregoing reasons, we affirm the district court's grant of summary judgment to WMATA.

This disposition is unpublished.  *See* D.C. Cir. R. 36(d).  We direct the Clerk to withhold this mandate until seven days after the resolution of a timely petition for panel or en banc rehearing.  *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**<u>Per Curiam</u>**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:     /s/
Daniel J. Reidy
Deputy Clerk

3