# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CLAYTON HARMSTON; GIGI GEORGE;
JAMES LEWIS; ERIK EVANSON; ERIK
SOLARES; DAVE PARRY; NOAH
MALLINGER; CARLOS MUSTAFICH;
LUIS DEJESUS; JAMES D. AHERNE;
JASON KIRCHNER; REGINALD SCOTT;
GERALD P. LYONS; WENDY HURLEY;
HOLLY STOUMEN; CHRISTINE ARNDT;
SHAREEF NASIR, individuals,
                      *Plaintiffs,*

            and

ANDREW COHEN, an individual,
            *Plaintiff-Appellant,*

WAUKEEN Q. MCCOY,
                      *Appellant,*

            v.

CITY AND COUNTY OF SAN
FRANCISCO; HEATHER FONG,
            *Defendants-Appellees.*

No. 09-16562

D.C. No.
3:07-cv-01186-SI

OPINION

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted
June 14, 2010—San Francisco, California

Filed December 10, 2010

19919

Before: Mary M. Schroeder and Jay S. Bybee,
Circuit Judges, and Owen J. Panner, District Judge.*

Opinion by Judge Bybee

*The Honorable Owen J. Panner, Senior United States District Judge for the District of Oregon, sitting by designation.

## COUNSEL

Waukeen Q. McCoy, Esq., San Francisco, California, for the plaintiff-appellant.

Lawrence Hecimovich, Deputy City Attorney, San Francisco, California, for the defendants-appellees.

## OPINION

BYBEE, Circuit Judge:

The district court sanctioned police officer Andrew Cohen and attorney Waukeen Q. McCoy (collectively, "Cohen") in 2007 for violating the court's discovery protective order. After the district court remanded the case to state court in

2008, and after the state court entered judgment, Cohen appealed the district court's sanctions order in 2009. We are first asked to decide whether the remand order was a "final" order for purposes of permitting Cohen to appeal the sanctions order. Concluding that the remand order was final, we then must determine whether the appeal was timely filed under Federal Rule of Appellate Procedure 4(a). We conclude that it was not and that we lack jurisdiction to hear Cohen's appeal.

I

Eighteen San Francisco police officers—most of whom were stationed in Bayview—created a comedy video in 2005. Finding the video offensive, Police Chief Heather Fong ("Fong") disciplined several of the participating police officers. In August 2006, eighteen of those officers (including co-appellant Andrew Cohen), represented by co-appellant McCoy, filed suit in state court, alleging race discrimination, retaliation, defamation, and intentional infliction of emotional distress. When the officers subsequently amended their complaint to include federal discrimination claims, CCSF removed the case to federal court on February 28, 2007.

Fearing public disclosure "of confidential, proprietary, or private information" during the course of discovery, the parties agreed to a Stipulated Protective Order ("Protective Order") on August 20, 2007. The district court later held that McCoy and Cohen violated the Protective Order when McCoy provided or showed a copy of the video of Chief Fong's deposition to a reporter for ABC News on September 20 or September 21, 2007, even though Fong's counsel had designated the deposition as confidential. While McCoy had objected to designating Fong's deposition as confidential, he never pressed this objection to the court. Citing this and three other examples of Protective Order violations,[1] none of which

---

[1]On September 19, 2007, Cohen posted on his website an interview summary designated confidential by the defendants. On September 27,

appellants dispute, the district court held McCoy and Cohen in contempt. Because the "evidence" of Cohen's violations was "clear and convincing," the court concluded "that sanctions for th[eir] contempt [were] appropriate to compensate [CCSF] for [their] noncompliance."

On November 16, 2007, Cohen appealed to this court, arguing that the district court's order held Cohen in *criminal* contempt, and that the court should have therefore provided procedural protections. In an unpublished order, we "conclude[d] that the district court found [Cohen] in civil contempt and that the district court imposed monetary sanctions against [Cohen] to compensate [CCSF] for losses sustained when [Cohen] violated the district court's protective order and to coerce compliance with the district court's protective order in the future." Because Cohen was held in *civil contempt*, we concluded, the sanctions order was "not an immediately appealable order," and we *sua sponte* dismissed the appeal. *See* 28 U.S.C. § 1291; *Bingman v. Ward*, 100 F.3d 653, 656 (9th Cir. 1996); *Kordich v. Marine Clerks Ass'n*, 715 F.2d 1392, 1393 (9th Cir. 1983) (per curiam).

On January 29, 2008, the district court granted in part Appellants' Motion for Clarification of the Court's Contempt Order. The court made clear "that the sanctions imposed on Cohen . . . were civil, not criminal," because "the Court awarded sanctions to defendants to compensate them for injuries associated with the improper disclosure of Chief Fong's deposition," and because "the Court intended in part to coerce plaintiffs to comply with the protective order in the future."

---

2007, Cohen filed an internal complaint with the San Francisco Police Department that included an edited version of the video of Fong's deposition as evidence. Finally, McCoy filed in the court's public record confidential excerpts from Fong's deposition transcript without attempting to file them under seal.

On October 9, 2008, the district court granted Cohen's motion to dismiss all federal claims and remand the case to state court. Citing 28 U.S.C. § 1367(a), and relying on its "discretion to remand a properly removed case to state court when no federal claim remains," the district court concluded "that the interests of judicial economy, comity and convenience . . . favor[ed] remand to state court for determination of the state law issues that . . . exclusively control[led] this case." On October 16, 2008, the district court issued an "Amended Clerk's Notice," in which the district court clerk notified the San Francisco Superior Court of the remand and transmitted the docket materials. On July 1, 2009, the San Francisco Superior Court entered summary judgment on most of Cohen's claims. Cohen filed a notice of appeal to this court on July 22, 2009.

## II

We may not proceed to the merits of this appeal until we are satisfied that we have jurisdiction. *Hawaii v. Office of Hawaiian Affairs*, 129 S. Ct. 1436, 1442 (2009). Whether we have jurisdiction depends on affirmative answers to two questions. First, does Cohen's appeal arise from a "final decision[ ] of [a] district court[ ] of the United States"? 28 U.S.C. § 1291. Second, has Cohen filed a notice of appeal within the time required by Federal Rule of Appellate Procedure 4(a)? *See Bowles v. Russell*, 551 U.S. 205, 209 (2007). If the answer to either question is no, we must dismiss the appeal for lack of jurisdiction. We now turn to these questions.

## A

**[1]** Decisions from which a party may appeal under § 1291 come in two varieties. Typically, a "final decision" under § 1291 "is . . . one by which a district court disassociates itself from a case." *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 604-05 (2009) (internal quotation marks and alterations omitted). Jurisdiction under § 1291 may also arise, however,

from "a 'small class' of collateral rulings." *Id.* at 605. "Under the collateral order exception, an appellate court may exercise its § 1291 jurisdiction to review a district court order that is not a final decision." *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1140 (9th Cir. 2007) (citation and internal quotation marks omitted). *See also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546-47 (1949).

**[2]** Here, Cohen challenges only the district court's sanctions order. The difficulty for us is whether and how we may reach the merits of that order. It is law of the case that the sanctions order was not immediately appealable, which leaves two other possible orders from which Cohen could be appealing the sanctions order: (1) the district court's 2008 remand order or, as Cohen argues, (2) the California Superior Court's summary judgment order. We can dismiss the latter possibility by quick reference to § 1291, which limits our jurisdiction to "all final decisions of the *district courts of the United States*." 28 U.S.C. § 1291 (emphasis added). The state court's summary judgment order obviously did not arise from a "district court[ ] of the United States." The other possibility is more intriguing, but requires us to answer two related questions. First, is a remand order appealable? Second, is a remand order a "final" rather than a "collateral" order such that prior non-final orders in the litigation—such as the district court's sanctions order here—may be appealed with it? The answer to both questions is yes.

1

**[3]** Under 28 U.S.C. § 1447(d), "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." Contrary to what appears to be the most natural reading of this provision, "the Supreme Court has explained that [§ 1447(d)] does not prohibit review of all types of remands." *Cal. Dept. of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1091 (9th Cir. 2008). Instead, § 1447(d) is limited by § 1447(c), which permits a district

court to remand because "the district court lacks subject matter jurisdiction." Reading these provisions *"in pari materia,"* the Supreme Court has held that "only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711-12 (1996) (citation and internal quotation marks omitted). In other words, if a district court remands a case to state court for *any reason* other than lack of subject matter jurisdiction, its remand order is appealable under 28 U.S.C. § 1291.

**[4]** Applying these principles, the Supreme Court recently held that a district court's dismissal of all federal claims and subsequent remand to state court after declining to exercise supplemental jurisdiction under § 1367(a), is not based on a "lack of subject matter jurisdiction" for purposes of § 1447(c) and can be appealed. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1867 (2009); *see also Powerex*, 533 F.3d at 1092-97 (coming to the same conclusion). These principles leave little doubt that the district court's remand order here, in which the court expressly used its discretion under § 1367(c)(3) to decline to exercise supplemental jurisdiction, was an appealable order.

2

**[5]** That conclusion, however, does not end the inquiry, because, as mentioned above, Cohen is challenging the sanctions order, not the remand order. We may review the sanctions order as part of Cohen's appeal from the remand order only if the district court's remand order was a final, and not a collateral, order. Generally, "earlier rulings . . . can be reviewed" on appeal from final judgment. 15A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE and PROCEDURE § 3905.1 (2d ed. 2002) (hereinafter WRIGHT & MILLER); *see also United States v. 191.07 Acres of Land*, 482 F.3d 1132, 1135 (9th Cir. 2007) ("In the absence of any indication that [the appellant] affirmatively waived his rights to a post-judgment appeal of this issue, his failure to timely pursue an interlocutory appeal

did not waive his right to appeal the question of his right to a jury trial."); *Matter of Kilgus*, 811 F.2d 1112, 1115 (7th Cir. 1987) ("An appeal from the final judgment brings up all antecedent issues."). Although direct authority is sparse on this point, the same is *not true* of collateral orders. *Cf. Kirkland v. Legion Ins. Co.*, 343 F.3d 1135, 1140 (9th Cir. 2003) ("Orders of civil contempt entered against a party during the course of a pending civil action *are not appealable until final judgment*.") (emphasis added) (internal quotation marks and citations omitted). To hold otherwise would allow several multi-issue appeals during the course of litigation and thereby flaunt the notion that the collateral order doctrine must "never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Mohawk*, 130 S. Ct. at 605 (citation and internal quotation marks omitted). Thus, the district court's sanctions order became appealable with the entry of the remand order *if* the remand order was final, but not if the remand order was collateral.

**[6]** Although Supreme Court precedent and our precedent have been somewhat less definitive on this point than one might like, we think the cases stand for the proposition that when a remand order is not barred from review under § 1447(d), it is final for purposes of § 1291. In *Quackenbush*, for example, the Supreme Court dealt with the question whether a district court's abstention-based remand order was barred from review under § 1447(d). The Court held that the remand order was not barred from review and was appealable on two independent grounds.[2] First, the Court explained that although the remand order did not meet the Court's "oft-repeated definition of finality," 517 U.S. at 713, it was "final"

---

[2]The Court relied heavily on *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983), in which the Court held that an abstention-based stay order was appealable under § 1291 both because it satisfied the test for "finality" and the test for an appealable "collateral order." *Id.* at 10-11.

in the sense that it "put[ ] the litigants . . . effectively out of court," *id.* at 714 (citation and internal quotation marks omitted). Phrased another way, the order was final because "[w]hen a district court remands a case to a state court, the district court disassociates itself from the case entirely, retaining nothing of the matter on the federal court's docket." *Id.* In the alternative, the Court held that the remand order was an appealable collateral order because "it conclusively determine[d] an issue that [wa]s separate from the merits" and the issue was "sufficiently important to warrant an immediate appeal." *Id.*

**[7]** Citing *Quackenbush* and *Moses H. Cone*, we relied on the same two grounds to support our conclusion that a remand order based on a district court's refusal to exercise supplemental jurisdiction was immediately appealable. *Powerex*, 533 F.3d at 1096. Like the Supreme Court, we held that the remand order at issue was appealable on either of two independent grounds. We said that the remand order was "final" because "the district court disassociated itself from the case entirely, retaining nothing of the matter on the federal court's docket." *Id.* at 1096 (citation, internal quotation marks, and alterations omitted). We also held that the remand order "qualifie[d] as an appealable collateral order under *Cohen*." *Id.* These cases establish that remand orders are "final" for purposes of sweeping in prior non-final orders. To the extent our decision in *Powerex* left open the question whether remand orders to state court are final or collateral orders, we now hold that such remands are final for purposes of § 1291.

As the Supreme Court held in *Quackenbush* and we held in *Powerex*, the district court's remand order possesses important elements of finality, at least with respect to federal court proceedings, because it put the parties "effectively out of *federal* court." *Powerex*, 533 F.3d at 1094 (emphasis in original) (citation and internal quotation marks omitted). The order may not entirely satisfy the traditional definition of finality. *Quackenbush*, 517 U.S. at 712 ("[W]e have held that a deci-

sion is ordinarily considered final and appealable under § 1291 only if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' ") (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945). But because the remand order "disassociate[d] [the district court] from the case entirely," and surrendered the district court's jurisdiction to a state court, it should be considered final for purposes of allowing a party to appeal prior non-final federal court orders. *See Powerex*, 533 F.3d at 1096.

In addition, this interpretation of "final" accords with our practice of giving "a practical rather than a technical construction to the finality rule, without sacrificing the considerations underlying that rule." *Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 681 (9th Cir. 1980); *see also Mohawk*, 130 S. Ct. at 605. As was the case in *Allstate*, "[t]here is no danger of piecemeal appeal confronting us if we find jurisdiction here, for nothing else remains in the federal courts." 630 F.2d at 681; *see also Mohawk*, 130 S. Ct. at 605 (identifying the avoidance of "piecemeal, prejudgment appeals" as among "the virtues of the final-judgment rule").

**[8]** Perhaps most importantly, it is not clear how else Cohen (or any other party in this situation) would be able to secure review of the district court's order. By all appearances, a case like this would never again see the federal light of day. And review on appeal in the state court system would be "grossly unsatisfactory" as it would "force a state court into the unfamiliar and dubious enterprise of reviewing a federal trial court." WRIGHT & MILLER § 3914.11. In light of existing case law and these considerations, we hold that the remand order was "final" for purposes of allowing Cohen to appeal the sanctions order against him. That there is an order from which Cohen may appeal the sanctions order against him, however, says nothing about whether that appeal is timely.

## B

**[9]** Having established that the district court's remand order constituted a final order, we now turn to whether Cohen

timely appealed from that order. Federal Rule of Appellate Procedure 4(a)(7) provides that a party must file a "notice of appeal . . . within 30 days after the judgment or order appealed from is entered." We have held that Rule 4(a)'s timeliness requirement "is both mandatory and jurisdictional." *United States v. Sanders*, 480 F.3d 932, 937 (9th Cir. 2007) (emphasis omitted). Before 2002, Rule 4(a) stated that "[a] judgment or order is entered for purposes of this [rule] when it is entered in compliance with Rules 58 and 79(a) of the Federal Rules of Civil Procedure." At the time, Federal Rule of Civil Procedure 58 required that "[e]very judgment shall be set forth on a separate document" and that "[a] judgment is effective only when so set forth and when entered as provided in Rule 79(a)." Rule 79(a) in turn, required the clerk to enter each civil action in the docket, including "appearances, orders, verdicts, and judgments." In light of Rule 58's categorical language at the time, we previously held that in the event a district court fails to enter a separate document in accordance with Rule 58 or fails to enter the order "in the docket" in accordance with Rule 79, the time to appeal for purposes of Rule 4(a) never begins to run. *See McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1218 (9th Cir. 1990); *Allah v. Sup. Ct. of Cal.*, 871 F.2d 887, 890 (9th Cir. 1989).

**[10]** In 2002, the rules changed. In order to avoid giving parties "forever to appeal," and because "[p]otential appellees and the judicial system need *some* limit on the time within which appeals can be brought," Congress modified the meaning of "entry of judgment" for purposes of determining whether an appeal was timely filed. Fed. R. App. P. 4 advisory committee's note. In cases where Rule 58(a) requires a "separate document," judgment is now considered entered "when the earlier of [two] events occurs: [1] the judgment or order is set forth on a separate document, or [2] 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79(a)." Fed. R. App. P. 4(a)(7)(A)(ii). Federal Rule of Civil Procedure 58 made the same change. Fed. R. Civ. P. 58(c)(2).

We applied this new rule in *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277 (9th Cir. 2009). There, we concluded that the district court's order compelling the parties to arbitrate some claims and dismissing the remaining claims was a "final order." *Id.* at 1283-84. Although the order was "final," we noted that the district court "did not enter judgment on the order to compel arbitration." *Id.* at 1284. Because a separate document had not been filed, we held that the losing party had, under Federal Rule of Appellate Procedure 4(a)(7)(A)(ii), "180 days to appeal the order." *Id.* at 1284. The appeal, which came 287 days after the order, was untimely.

The D.C. and Seventh Circuits have also applied and discussed this new rule. In *Outlaw v. Airtech Air Conditioning and Heating, Inc.*, 412 F.3d 156 (D.C. Cir. 2005), the court observed that the district court's May 6 order resolved "all pending claims against all parties," but noted that the "separate document rule" was "ignored." *Id.* at 162. Pre-2002, the court noted, that would allow for an eternal deadline, but the rules were amended in 2002 "to address the problem that a failure to comply with the separate document rule meant that the time to appeal never expired because it never began to run." *Id.* at 163; *see also* Fed. R. App. P. 4, advisory committee's notes (2002 amendments). In light of that change, the court held, FRAP's 30-day clock began to run "150 days after the entry of the May 6 order," and the appeal was timely. *Id.* at 163. And in *TDK Elecs. Corp. v. Draiman*, 321 F.3d 677 (7th Cir. 2003), the Seventh Circuit commented that, under the new rule, "once the judge has resolved the case, even if by an order that does not satisfy the rules, and 150 days have lapsed, the decision is treated *as if* final even though formally defective." *Id.* at 679-80 (emphasis in original).[3]

---

[3]The Advisory Committee originally allowed for the entry of judgment 60 days after an otherwise final order, but extended the deadline to 150 days because although "[a] 60-day period of inactivity is not sufficiently rare to signal to litigants that the court has entered its last order . . . . 150 days of inactivity is much less common and thus more clearly signals to litigants that the court is done with their case." Fed. R. App. P. 4 advisory committee's note.

**[11]** "Because Congress decides . . . whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them." *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007). Congress has decided that ensuring finality eventually becomes more important than strictly enforcing Rule 58's separate document requirement. In this case, the balance Congress struck means the end of Cohen's appeal. The district court entered its remand order on October 9, 2008, but failed to enter a separate document containing the judgment. Thus, because the district court's remand order constituted a final order, Cohen's last day to appeal came 180 days later, on April 17, 2009 (or, if the relevant final order is the Amended Notice of the remand order, April 25, 2009). Because Cohen's notice of appeal was filed on July 22, 2009, it was untimely, and we lack jurisdiction.

## III

"If rigorous rules like the one applied today are thought to be inequitable, Congress may authorize courts to promulgate rules that excuse compliance with the statutory time limits." *Bowles*, 551 U.S. at 214. For now, we must dismiss Cohen's appeal.

DISMISSED.