**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ZAKIA JACKLINE RAJABIAN; DULCERIA LA BONITA WHOLESALE LLC, an Arizona corporation, | No. 24-3000 |
| | D.C. No. 2:23-cv-00168-MTL |
| *Plaintiffs - Appellants*, | |
| v. | |
| | OPINION |
| MERCEDES-BENZ USA, LLC; PHOENIX MOTOR COMPANY INCORPORATED, an Arizona Corporation doing business as Mercedes-Benz of Scottsdale; VERN FOUTZ;JEFF NOWAK; GUS GONZALES; JANE DOES, Spouses; Foutz, Nowak, Gonzales; LIONHEART SECURITY INTERNATIONAL CONSULTING LLC, an Arizona limited liability company; GERALD SCHEIBLY, | |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the District of Arizona
Michael T. Liburdi, District Judge, Presiding

Argued and Submitted March 25, 2025
Phoenix, Arizona

Filed September 17, 2025

Before: Susan P. Graber and Mark J. Bennett, Circuit
Judges, and John R. Tunheim, District Judge.[*]

Opinion by Judge Graber;
Concurrence by Judge Tunheim

## SUMMARY[**]

### Stay of Proceedings / Appellate Jurisdiction

The panel (1) affirmed the district court's order denying a motion to lift a *Colorado River* stay of a federal case pending state court litigation; and (2) dismissed as untimely plaintiffs' appeal to the extent that it challenged the initial stay.

As to appellate jurisdiction, the panel held that an order staying a federal case under the *Colorado River* doctrine is an appealable final order under 28 U.S.C. § 1291. Under Fed. R. App. P. 4(a)(1)(A), a notice of appeal in a civil case must be filed with the district clerk within 30 days after entry

[*] The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of the judgment or order appealed from.  Fed. R. Civ. P. 58(c) provides that a judgment is entered:

> (1) if a separate document is not required, when the judgment is entered in the civil docket under Rule 79(a); or
>
> (2) if a separate document is required, when the judgment is entered in the civil docket under Rule 79(a) and the earlier of these events occurs:
>
>> (A) it is set out in a separate document; or
>>
>> (B) 150 days have run from the entry in the civil docket.

The panel held that the judgment at issue required a separate document.  The district court granted the stay on November 22, 2023, and later formally imposed the stay in a text-only minute order on December 19, 2023.  The panel held that the minute order qualified as a separate document because it clearly signaled, in unadorned fashion, that the matter was fully closed.  The minute order therefore started the 30-day appeal clock, and so plaintiffs' notice of appeal, filed on May 6, 2024, was untimely as to the initial stay.

The panel affirmed the district court's denial of plaintiffs' motion to lift the stay.  Joining other circuits, the panel held that the denial of a motion to lift a stay is reviewed for an abuse of discretion.  The panel concluded that the district court did not abuse its discretion because, in imposing the stay, the court engaged in a thorough analysis under the *Colorado River* doctrine, stating the proper legal standard and following it carefully, and there were not any later material changes of law or fact that could have

undermined the continued propriety of the court's initial analysis.

Concurring, District Judge Tunheim wrote separately to emphasize the ambiguity in Fed. R. Civ. P. 58 in the age of exclusive digital filing and communication.

## COUNSEL

Rob Somers (argued), Aaron M. Finter, and Michael A. Schern, Schern Richardson Finter PLC, Mesa, Arizona, for Plaintiffs-Appellants.

Carl J. Mudd (argued) and Matthew D. Kleifield, Lewis Brisbois Bisgaard & Smith LLP, Phoenix, Arizona; Larry J. Cohen (argued), Cohen Law Firm, Phoenix, Arizona; Brendan A. Murphy, Hendricks Murphy PLLC, Phoenix, Arizona; Jill Ormond, Gordon Rees Scully Mansukhani LLP, Phoenix, Arizona; Steven D. Crocchi, Clyde & Co LLP, Phoenix, Arizona; for Defendants-Appellees.

**OPINION**

GRABER, Circuit Judge:

Several parties dispute ownership of a particular Mercedes-Benz car. A lawsuit was brought in a state court, and then—almost a year later—another action was brought in a federal district court. Both proceedings sought to answer the same question: who was the car's rightful owner? The district court stayed the federal case under the doctrine described in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). Plaintiffs did not appeal that stay. But they filed a motion to lift the stay months later. The district court denied Plaintiffs' motion, and Plaintiffs appeal. We affirm the district court's denial of the motion to lift the stay and dismiss as untimely the appeal to the extent that it challenges the initial stay.

FACTUAL AND PROCEDURAL BACKGROUND

A. Purchase and Possession of the Vehicle

Phoenix Motor Company ("PMC") is a car dealership that does business as Mercedes-Benz of Scottsdale. In October 2021, PMC paid Wholesale Exotics, an automobile wholesaler, $274,800 for a 2021 Mercedes-Benz G63. Wholesale Exotics deposited PMC's check and sent the funds to Fredrick Aljundi, who agreed to pick up the car and deliver it to PMC on behalf of Wholesale Exotics. Aljundi, along with two of his colleagues, used those funds to purchase the vehicle from Mercedes-Benz Chandler.

Then things went awry. Instead of delivering the car to PMC, Aljundi traded it in to another dealership, Mercedes-Benz of North Scottsdale. When PMC inquired into the car's location, one of Aljundi's associates explained that

Aljundi planned to "refund [PMC's] money and profits" rather than deliver the car.

In February 2022, Zakia J. Rajabian and Dulceria La Bonita Wholesale (collectively, "Dulceria") bought the car from Mercedes-Benz of North Scottsdale, receiving title to it later that month.  After gaining possession of the car, Dulceria locked it away in a storage locker, keeping the car's door open to disengage the built-in Mercedes-Benz tracking system.  Nevertheless, PMC, with the help of Mercedes-Benz USA, allegedly used the "Mercedes Me Connect" technology to locate the car in Dulceria's storage locker on March 15, 2022.

### B.  State Court Litigation

Perhaps unsurprisingly, a flurry of litigation followed. On March 18, 2022, PMC filed a complaint in Maricopa County Superior Court, alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and conversion against Dulceria, Wholesale Exotics, Aljundi, his company, and various other employees and agents.  PMC also took possession of the car after requesting and receiving a preliminary order from the state court requiring delivery of the car.[1]  Dulceria answered PMC's complaint and brought counterclaims for abuse of process, invasion of privacy, and intentional interference with contractual relations.[2]

Litigation in the state court continued with motions for dismissal and summary judgment, in which both PMC and

---

[1] The Supreme Court of Arizona later dissolved the preliminary order.

[2] Dulceria later amended its answer to add a counterclaim that Mercedes-Benz USA and PMC violated Arizona Revised Statutes section 13-2316, which prohibits various forms of computer tampering.

Dulceria argued over who had superior title to the car. On January 30, 2023, the state trial court found PMC to be the rightful owner of the car.

## C. Federal Court Litigation

Only five days before the state court found PMC to be the rightful owner of the car—and nearly a year after the state-court litigation began—Dulceria filed this action in federal district court against PMC, Mercedes-Benz USA, and several of their employees. The operative complaint lists several causes of action including, among others, claims for invasion of privacy, breach of implied contract, a violation of 18 U.S.C. § 2511, and a violation of Arizona Revised Statutes section 13-2316.

PMC filed a motion to dismiss for lack of subject matter jurisdiction, seeking either a dismissal or a stay pursuant to the Colorado River doctrine. The court granted PMC's request for a stay, explaining in an order dated November 22, 2023, that the relevant factors weighed strongly in favor of a Colorado River stay. On December 19, 2023, the district court held a hearing and formally ordered the stay in the form of a text-entry minute order. The relevant portion of that minute order provides:

> **Document Number:** 79 (No document attached)
>
> . . . .
>
> MINUTE ENTRY for proceedings held before Judge Michael T. Liburdi: Status Conference held on 12/19/2023. . . . IT IS ORDERED staying [sic] the case on all

claims pending the outcome of the state court litigation. . . .

. . . This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (LMR)

**2:23-cv-00168-MTL Notice has been electronically mailed to:** [the attorneys of record].

(Underlined emphasis added.)[3]

D.  Post-Stay Developments

After the district court stayed the case, Dulceria sought leave from the state court to add four counterclaims against PMC—violation of Arizona's consumer fraud act, negligence, violation of 18 U.S.C. § 2511, and violation of 18 U.S.C. § 2701—and to add new parties and claims included in the federal case but not yet included in the state case.  The state court allowed Dulceria to add new claims against PMC, but denied Dulceria's request to bring in new claims against new parties.  The court reasoned that Dulceria "knew about these parties and [its] allegations against them" and that Dulceria "made a conscious, informed decision not to sue these individuals/entities in this action."

On March 20, 2024, Dulceria filed a motion in the district court seeking to lift the stay.  The district court denied the motion on April 30, 2024.  Dulceria appealed the

---

[3] The minute order included some additional text but, during oral argument, Dulceria affirmatively waived any argument that the additional text has any bearing on the outcome of this appeal.  We therefore treat the minute order as if it included only the text block-quoted above.

district court's denial of its motion to lift the stay on May 6, 2024, within 30 days of its issuance. But Dulceria did not file a notice of appeal regarding the district court's initial stay order. On June 11, 2024, the state court dismissed several of Dulceria's claims, including the federal wiretapping claim (18 U.S.C. § 2511).

## STANDARD OF REVIEW

We review de novo questions of jurisdiction, Hooper v. Brnovich, 56 F.4th 619, 624 (9th Cir. 2022) (per curiam), including whether the facts of a case satisfy the requirements of the Colorado River doctrine, Seneca Ins. Co. v. Strange Land, Inc., 862 F.3d 835, 840 (9th Cir. 2017). When those requirements are satisfied, we review for abuse of discretion a district court's decision to impose such a stay. Id. Application of the Colorado River doctrine is the exception, not the rule, and there is a strong presumption against its application. Id. at 841.

Although we have not yet said so in a published opinion, only in an unpublished memorandum disposition, Johnson v. Inos, 619 F. App'x 651 (9th Cir. 2015), we review for abuse of discretion a district court's denial of a motion to lift a stay. Id. at 651. A motion to lift a stay resembles a motion for reconsideration of the court's grant of a stay. Marti v. Iberostar Hoteles y Apartamentos S.L., 54 F.4th 641, 646 (11th Cir. 2022). And we review for abuse of discretion a district court's denial of a motion to reconsider. Do Sung Uhm v. Humana, Inc., 620 F.3d 1134, 1140 (9th Cir. 2010). We thus join the other circuits that review the denial of a motion to lift a stay for abuse of discretion. See, e.g., United States v. Acorn Tech. Fund, L.P., 429 F.3d 438, 444–45 (3d Cir. 2005); SEC v. Vescor Cap. Corp., 599 F.3d 1189, 1196

(10th Cir. 2010); <u>Marti</u>, 54 F.4th at 646; <u>Murata Mach. USA v. Daifuku Co.</u>, 830 F.3d 1357, 1361 (Fed. Cir. 2016).

## DISCUSSION

Dulceria challenges both (A) the merits of the district court's initial order imposing the stay and (B) the court's denial of the motion to lift the stay. We address each issue in turn.

A. <u>We Lack Jurisdiction to Review the District Court's Initial Stay Because Dulceria Did Not Appeal in Time.</u>

The parties dispute, on timeliness grounds, whether we have jurisdiction to consider the merits of the initial stay. An order staying a federal case under the <u>Colorado River</u> doctrine constitutes an appealable final order under 28 U.S.C. § 1291. <u>Nakash v. Marciano</u>, 882 F.2d 1411, 1413 (9th Cir. 1989); <u>see</u> Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies.").[4] "In a civil case . . . the notice of appeal . . . must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A). The question here, then, is when the district court <u>entered</u> the order staying the case.

---

[4] Our recent opinion in <u>McNeil v. Gittere</u>, No. 23-3080 (9th Cir. Sep. 2, 2025), is distinguishable. There, the defendants appealed from a collateral order—the district court's denial of qualified immunity—whereas Plaintiffs here appeal a stay under the <u>Colorado River</u> doctrine, which our court treats as a final order. <u>Nakash</u>, 882 F.2d at 1413; <u>see</u> <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 10 (1983) ("[A stay under the <u>Colorado River</u> doctrine] amounts to a dismissal of the suit.").

That question is less straightforward than one might think.  Federal Rule of Civil Procedure 58(c) provides that a "judgment is entered":

(1) if a separate document is not required, when the judgment is entered in the civil docket under Rule 79(a); or

(2) if a separate document is required, when the judgment is entered in the civil docket under Rule 79(a) and the earlier of these events occurs:

(A) it is set out in a separate document; or

(B) 150 days have run from the entry in the civil docket.

Fed. R. Civ. P. 58(c).[5]  The judgment at issue here requires a "separate document."  See Fed. R. Civ. P. 58(a) (providing that all judgments, with some exceptions not relevant here, require a separate document).  The timeliness of Dulceria's appeal, then, hinges on whether the December 19, 2023, minute order satisfies the requirements of a "separate document."  If so, Dulceria's 30-day "appeal" clock began ticking on December 19, 2023.  Otherwise, Dulceria's 30-day window did not begin until 150 days after that date.

The rule itself is ambiguous as to what qualifies as a "separate document," including whether a minute order can

---

[5] This rule was amended in 2002, in part to fix a wrinkle that existed in the pre-2002 version of Rule 58.  Harmston v. City & County of San Francisco, 627 F.3d 1273, 1279–80 (9th Cir. 2010).  By changing the rules and adding the 150-day provision, Congress chose "to avoid giving parties 'forever to appeal.'"  Id. at 1280.

constitute a "separate document" for purposes of Rule 58. But we have already held that minute orders can do exactly that. See Brown v. Wilshire Credit Corp. (In re Brown), 484 F.3d 1116, 1121–22 (9th Cir. 2007) (holding, after the 2002 amendment to the rules, that minute orders can constitute a "separate document" that starts the appeal clock); Ingram v. ACandS, Inc., 977 F.2d 1332, 1339 (9th Cir. 1992) (holding that, under the pre-2002 rules, two separate minute orders denying post-trial motions each started the appeal clock).

To determine whether a particular minute order has that effect, we ask whether there has been a "clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as it is concerned, is the end of the case." In re Brown, 484 F.3d at 1122 (citation and internal quotation marks omitted). Otherwise, parties might "be misled about when their time to appeal begins to run." Id. As we and other courts have explained, that clear signal is lacking when the district court's minute order signals that the case is not fully closed or when the order contains significant reasoning and, therefore, is not "separate." Id. at 1122–23; see also In re Cedant Corp. Secs. Litig., 454 F.3d 235, 241 (3d Cir. 2006) ("[A]n order will be treated as a separate document if it meets three criteria: first, the order must be self-contained and separate from the opinion; second, the order must note the relief granted; and third, the order must omit (or at least substantially omit) the District Court's reasons for disposing of the parties' claims.").

Here, the district court's November 22, 2023, order set forth its reasoning in full for implementing the stay. Then, the court separately entered a minute order on December 19, 2023, which clearly signaled, in unadorned fashion, that the matter was fully closed. Indeed, the court's order stated without elaboration: "IT IS ORDERED staying the case on

all claims pending the outcome of the state court litigation." The district court's entry of that order into the docket automatically generated a "Notice of Electronic Filing," which the court mailed electronically to the parties with the entire text of the minute order. The electronic docket also automatically designated the order as "Document Number: 79."

We have, in the past, considered whether an order had been mailed to the parties. See Ingram, 977 F.2d at 1338. When the parties accept electronic notices from the court, we see no relevant difference between mailing through the post office and electronic mailing. Nor does any party argue otherwise. Additionally, actual receipt of the document in either physical or electronic form is sufficient. All parties here actually received copies of the electronic filing.

In the circumstances, the December 19, 2023, minute order constituted a "separate document" for purposes of Rule 58(c) and, therefore, started the 30-day appeal clock.

The conduct of the parties confirms the finality of the minute order. See In re Brown, 484 F.3d at 1120 (considering the parties' conduct). The first motion filed in federal court after the court imposed the stay on December 19, 2023, was Dulceria's March 20, 2024, motion to lift the stay. By contrast, during the preceding months, active litigation continued in the state court. That conduct is entirely consistent with the parties' understanding that the minute order fully stayed the case.

Dulceria argues that the minute order did not start the appeal clock because it was a "text entry only" and there was "no document attached," that is, "no PDF document associated" with the docket entry. Notably, Dulceria takes no issue with the content of the minute order as it relates to

finality.  Indeed, Dulceria's lawyer stated during oral argument that the appeal clock would have started had the exact text of the minute order appeared in PDF format.  In other words, Dulceria asks us to elevate form above function by requiring a particular document type.  We are not aware of any case law, either from our court or from any other circuits, supporting the adoption of such a rigid rule.

Dulceria also contends that our decisions in Comedy Club, Inc. v. Improv West Associates, 553 F.3d 1277 (9th Cir. 2009), and Harmston, 627 F.3d 1273, compel us to hold that its appeal was timely.  But those cases did not involve, as here, an unadorned minute order that clearly and unequivocally took the case out of federal court in a document separate from the court's reasoning.

In sum, Dulceria had 30 days after December 19, 2023, to appeal the initial stay.  Dulceria's appeal came too late, and we therefore lack jurisdiction to review the initial stay.

### B. The District Court Did Not Err in Refusing to Lift the Stay.

Although Dulceria did not timely appeal the district court's stay, it did timely appeal the district court's denial of its motion to lift the stay.  Accordingly, we have jurisdiction to review that order.  But we conclude that the district court did not abuse its discretion in declining to lift the stay.

A stay under the Colorado River doctrine is a "narrow exception to 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" Holder v. Holder, 305 F.3d 854, 867 (9th Cir. 2002) (quoting Colorado River, 424 U.S. at 817).  Such a stay is not appropriate where there is substantial doubt that the resolution of the state proceedings will resolve the federal

case. Id. at 868.  The state and federal cases must be parallel, but the doctrine does not require exact parallelism so long as "the two proceedings are substantially similar." Nakash, 882 F.2d at 1416 (internal quotation marks omitted); see id. (holding that two proceedings were substantially similar where both disputes concerned the parties' actions after one party purchased interest in a company).

The district court must consider whether eight factors point in favor of a stay. R.R. St. & Co. v. Transp. Ins. Co., 656 F.3d 966, 978–79 (9th Cir. 2011).  Those factors are:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits;  (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

Id.

Dulceria did not identify, nor do we discern, any material legal or factual error committed by the district court in its Colorado River analysis, which could have warranted lifting the stay.  In its initial decision, which the district court implicitly adopted in declining to lift the stay, the district court engaged in a thorough analysis under the Colorado River doctrine.  The district court stated the proper legal

standard and followed it carefully.  The district court's eight-factor analysis considered the reluctance to stay the exercise of federal jurisdiction required by the <u>Colorado River</u> doctrine and permissibly decided to impose a stay.  Having applied the proper test, the district court ultimately found that six of the eight factors favored a stay.  Of those six factors, one—the risk of piecemeal litigation—"strongly" favored a stay.  Of the two factors that did not favor a stay, one factor—whether state or federal law is at issue—was neutral, and only a single factor—whether the federal forum was convenient—weighed against a stay.

Nor were there any material changes of law or fact after the district court granted the stay, which could undermine the continued propriety of its initial analysis. Dulceria points to only one changed circumstance:  The state court denied Dulceria's attempt to add parties that are in the federal proceeding but not in the state proceeding.  But those parties were not a part of the state proceeding when the district court granted the stay, and they are not parties to the state proceeding now.   Thus, Dulceria's alleged change in circumstance is not a change at all.   Moreover, a stay pursuant to the <u>Colorado River</u> doctrine, by definition, contemplates continued litigation in state court.   Even granting Dulceria's premise that the state court's denial of its request to add parties constituted a change in circumstances, we see no abuse of discretion in the district court's conclusion that this minor change did not warrant lifting the stay.

**AFFIRMED IN PART and DISMISSED IN PART.**

Tunheim, District Judge, concurring:

I concur in the opinion but write separately to emphasize the ambiguity in Federal Rule of Civil Procedure 58.  The aim of Rule 58 is clarity, but the term "separate document" is anything but clear.  In the age of exclusive digital filing and communication, Rule 58 is ripe for an amendment to resolve the current disputes about what constitutes a "separate document."